CLARK, Retired Circuit Judge.
On a trial without a jury, the court found defendant (appellant) guilty of a violation of the Alabama Worthless Check Act, Code 1975, § 13 — 4-110, et seq., and sentenced him to imprisonment for fifteen months.
*1005 The indictment charged in pertinent part that defendant “with intent to defraud, did draw or cause or direct the drawing of a check ... on a depository to-wit: The First National Bank of Tuscaloosa, Tuscaloosa, Alabama, knowing at the time of the drawing of said check that the maker, drawer or payer thereof did not have sufficient funds on deposit in or enough credit with the said depository for the payment in full of said check and all other checks on such funds or credit then outstanding. The indictment contained a photocopy of the face of the alleged check, dated June 3, 1978, in the sum of seven hundred eight dollars, $708.00, and it purportedly bore a signature of Luther G. Claunch. It was a printed form of a bank check with the name and address of Luther G. Claunch, the number of the particular check and the check account number printed thereon.
The evidence is without dispute that all the writing on the check was the handwriting of defendant. He testified that he wrote and signed the check about 4:00 or 5:00 A.M. and handed it to Don Curtis in payment of a gambling debt of defendant in a nearly night long poker game that had just ended. He said that the understanding between him and Curtis was that he did not have money in the bank sufficient to cover the check, that Curtis was to hold it for a few days and defendant would then “pick it up.” He was corroborated by a witness who said he saw defendant write the check and hand it to Mr. Curtis, that he heard defendant tell Mr. Curtis that the check was not good but that defendant would “straighten the money with him” at a later time. The witness said that on the same occasion he observed that Mr. Curtis handed the check to Joseph Campbell and that Mr. Campbell left the game with the check.
The undisputed evidence shows that on June 5, 1978, the check was presented by a man to a teller at the Skyland Branch of the First National Bank of Tuscaloosa, that the teller gave the man presenting the check the sum of $708.00 in full aiid that the man left the bank with the money. As the check was processed at the branch bank in coordination with the main office of the bank, it was determined that there was only $44.00 in defendant’s account at that time, and the check was then marked “Insufficient Funds.” Defendant was promptly notified, and thereafter, though not promptly, defendant paid the bank the amount of its loss in cashing the check.
There were two principal issues in the trial court, one a question of law and the other a question of fact. Both were eagerly controverted. Perhaps the legal question was chiefly argued in the trial court. On appeal, the controversy is devoted almost exclusively to the legal question, it being now presented by appellant in four parts.
In contending that as a matter of law, under the undisputed facts, there was no violation of the Worthless Check Act, as proscribed in § 13-4-113, appellant says: (1) that Alabama’s Uniform Commercial Code, Code of Alabama 1975, title 7, applies to “criminal proceedings under the Alabama Worthless Check Act;” (2) A bank cannot “refuse payment” of a check so as to provide prima facie evidence of intent to defraud and of knowledge of insufficient funds in or credit with “the bank on the part of the drawer after a teller has fully cashed the check and paid the holder thereof the full amount of the check; (3) That a check drawn on an account with insufficient funds to pay it cannot be the subject of a “prosecution under the Alabama Worthless Check Act” if a teller of the bank cashes the check by paying a drawer and holder thereof the full amount of the check, and (4) the presentation of a check drawn on an account with insufficient funds does not constitute “evidence of intent to defraud, when presented to the depository which has records of the account against which it is drawn.”
We disagree with each of appellant’s contentions. As to (1), although there may be many instances when the terminology and procedures set forth in the Uniform Commercial Code are to be taken into consideration in connection with a prosecution under the Alabama Worthless Check Act, the special definitions of words and terms *1006 in the former are “definitions applying to this article [Code of Alabama, Article 7] or to specified parts thereof and the sections in which they appear.” § 7-2-103(2). That the meaning given by the Uniform Commercial Code to the multitude of words and terms contained therein is not applicable to the Alabama Worthless Check Act is illustrated by the difference between the two statutes as to the definition of a “check.” In the Uniform Commercial Code in § 7 — 3— 104(2), we find, “A writing which complies with the requirements of this section is: (b) A ‘check’ if it is a draft drawn on a bank and payable on demand.” while the Alabama Worthless Check Act, in § 13-4-111(1) defines a “Check” as “Any check, draft or other written order for money or its equivalent.” In § 13 — 4-111(3), a “Depository” is defined as “Any bank, person, firm, corporation or any other drawee of the check.” The meaning of words or terms in the Alabama Worthless Check Act is not necessarily the same as the meaning ascribed to them in the Uniform Commercial Code.
As to appellant’s (2), appellant relies upon the Uniform Commercial Code as to the meaning of the term “refused payment” in arguing that a bank does not “refuse payment” on a check after its teller cashes the check for the person presenting it. The notion is clearly not in harmony with the language of the Alabama Worthless Check Act and with the practice in banking circles, which is a matter of common knowledge. The cashing of a check by a teller is generally understood to be conditional and subject to revocation by the bank in the event the drawer does not have funds in the bank out of which the check can be paid.
As to (3), we find neither reason nor authority for holding that either the language or the spirit of the law permits an interpretation to the effect that the prima facie evidence of fraudulent intent and knowledge of insufficient funds or credit that is to be found in the drawing of the check could not be found therein in an instance where the drawer successfully obtains from a teller of the drawee bank cash for the amount of the check. It is a matter of common knowledge that a teller often assumes that a check drawn and presented by a known customer is supported by sufficient funds in the bank to cover the check. The particular circumstance of his having presented the check could well have a material bearing upon the question of fact as to his fraudulent intent and guilt but not as to the existence of prima facie evidence of his intent.
By (4), appellant draws the conclusion that any person could escape the statutory “evidence of intent to defraud” when he has drawn a worthless check if he presents it to the bank upon which it is drawn, which, if true, would be such a boon to “bad check artists” that a radical change would be required in the prevailing practice of banks generally, which in this particular is a beneficent practice and in the best interest of the public.
At the conclusion of the evidence, defendant moved to exclude the evidence, and the same was briefly argued by the attorneys for the respective parties. In such argument, defendant’s counsel emphasized legal contentions similar to those we have discussed above. The court overruled the motion. Thereupon, the transcript shows that the attorneys “argued their case to the Court.” The transcript omits such argument of counsel and does not commence again until the court said:
“THE COURT: Will the Defendant come around, please. Sir, it is the finding of the Court that the State has met its burden of proving this case beyond a reasonable doubt and to a moral certainty that you violated the Alabama Worthless Check act as written and drawn in the indictment in this case and before I pronounce sentence ...”
Thereupon, after appropriate allocution, the court pronounced sentence and entered a judgment of conviction and sentence.
Notwithstanding conformity with the usual practice and the propriety of omitting from the transcript the arguments of counsel at the close of a case, the absence *1007 thereof, as well as the absence of any possible comments the court may have made during the argument, leaves us in the dark as to whether what we consider as a crucial issue of fact was ever presented to the court in such a way that the court duly considered and definitely decided it. Apparently there was no request for a special finding of facts, and the court was under no duty to make one. Generally as to a non-jury trial where there is substantial evidence of guilt to support a judgment of guilty, the judgment will not be disturbed on appeal “unless it is plainly and palpably contrary to the weight of the evidence.” Stephens v. State, 50 Ala.App. 244, 278 So.2d 245 (1973). There was substantial evidence, we think, of guilt in this case, but, as hereafter discussed, justice requires, we think, that we know whether and how the court decided the pivotal issue of fact, which apparently became greatly obscured and overlapped by the incessant controversy as to principles of law, which the trial court decided against defendant, and which this court now decides against defendant-appellant.
On the crucial factual issue in the case, there was no accord between the parties. According to strong evidence for the State, the defendant presented the check to the teller of the bank, at one of its suburban branches where it was cashed for defendant by the teller. According to strong evidence for defendant, the teller was mistaken as to the identity of defendant as the person who presented the check to the teller and obtained cash in payment thereof, the check was presented by the witness Joseph Campbell, contrary to the expressed understanding between defendant and the person to whom he had given the check that it was not to be banked. The credibility of the witnesses is not for us to decide; it is properly the function of the trial judge. If he decided that defendant was the person that presented the cheek to the teller and obtained cash for it, there is substantial evidence to support such decision. If he decided that the teller was mistaken in her identification of defendant as the one who presented and obtained cash for the check and that such was done without defendant’s guilty knowledge or participation, the judgment, in our opinion, is not supported by substantial evidence and should be reversed. There are some details of evidence that point one way and some another on the crucial issue of fact, which unquestionably came to the attention of the trial court, and they require no comment by us.
The case should be remanded to the trial court for a statement of the trial judge, to be made a part of a Return to this court, showing whether the trial court determined that defendant was the person who presented the check to the teller and then obtained payment thereof, and, if not, whether the court determined from the evidence that the defendant knowingly took part, as an aider or abettor, in the presentation of the check to the teller. If the trial court states that it determined that defendant was the person who presented the check to the teller and received cash therefor, nothing else need be stated by the trial court. We leave it entirely to the trial judge as to the length and brevity of the statement. We leave it also entirely to the trial court as to whether there should be a hearing, for any expression of views of counsel for the respective parties, before the court makes its written statement hereby directed. No evidence should be received at any such hearing.
Upon the Return to this Remandment, the Clerk of the Circuit Court will send counsel for each of the parties, trial counsel and appellate counsel, a copy of the Return, and counsel for each of the parties will then have fifteen days within which to file a brief on the subject and opposing counsel will then have ten days within which to file a reply brief.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The cause is hereby
REMANDED WITH DIRECTIONS.
*1008 HARRIS, P. J., and TYSON, BOOKOUT, BOWEN, JJ., concur.
DeCARLO, J., dissents.